Lawrence F. Morrison, Esq.
THE MORRISON LAW OFFICES, PC
287 Spring Street
New York, New York 10013
Telephone: (212) 620-0938

**Hearing Date: April 25, 2012**
Hearing Time: 10:00am

UNITED STATES BANKRUPCTY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE:                                                    Chapter 11

505 West 150ᵗʰ Street, LLC,                               Case No.: 12-10290-JMP

                    Debtor.

-----------------------------------------------------------X

## NOTICE OF MOTION TO DISMISS

      **PLEASE TAKE NOTICE** that, upon the annexed Motion dated April 4, 2012,

Lenders Capital, LLC ("**Lender**"), by and through its counsel, Lawrence F. Morrison, will move

this Court before the Honorable James M. Peck in Room 601, United States Bankruptcy Court,

One Bowling Green, New York, New York 10004 on the 25th day of April, 2012 at 10:00 a.m.,

or as soon thereafter as counsel may be heard, for the entry of an Order, pursuant to section

1112(b) Title 11 of the United States Code (the "**Bankruptcy Code**"), dismissing the this case;

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief

requested in this Motion must be in writing, shall conform to the Bankruptcy Rules, the

Bankruptcy Code and the Local Rules of the United States Bankruptcy Court for the Southern

District of New York, and must be electronically filed and served no later than April 18, 2012

(the "**Objection Deadline Date**").

Dated: New York, New York
      April 4, 2012

                                        By: */s/* Lawrence F. Morrison
                                        Lawrence F. Morrison, Esq.
                                        THE MORRISON LAW OFFICES, PC
                                        287 Spring Street
                                        New York, New York 10013
                                        Telephone: (212) 620-0938

Lawrence F. Morrison, Esq.
THE MORRISON LAW OFFICES, PC
287 Spring Street
New York, New York 10013
Telephone: (212) 620-0938

**Hearing Date: April 25, 2012**
**Hearing Time: 10:00am**

UNITED STATES BANKRUPCTY COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

IN RE:                                              Chapter 11

505 West 150th Street, LLC,                          Case No.: 12-10290-JMP

                          Debtor.
————————————————————X

## MOTION TO DISMISS

Lenders Capital, LLC ("Lender") respectfully submits this motion ("Motion") for an order, pursuant to 11 U.S.C. § 1112, for dismissal of the above captioned case.

## BACKGROUND

1.      Debtor is a real estate ownership/management company, which is located at 505 West 150th Street, New York, New York 10031 ("Premises").

2.      On or around August 27, 2008 Lender and Debtor duly executed a note in the amount of $350,000, secured by a mortgage, where Debtor granted to Lender a mortgage in the Premises. A copy of the note and mortgage are annexed hereto as *Exhibit "A"*.

3.      Due to Debtor's default on the note and mortgage, Lender commenced a foreclosure action against the Debtor and was granted a judgment of foreclosure. *Lenders Capital LLC v. 505 West 150th Street, LLC, et al.* Case No. 101349 /2010, Supreme Court for the State of New York.

4.      A foreclosure sale was scheduled for January 25, 2012, at 2:15 p.m.

3

5.    Debtor filed for bankruptcy on January 25, 2012, and the foreclosure sale was stayed. The Debtor has not made a single post petition mortgage payment subsequent to the filing of this bankruptcy case.

## ARGUMENT

### A.    Debtor's Chapter 11 Case Should be Dismissed Pursuant to 11 U.S.C. § 1112(b)

6.    Pursuant to 11 U.S.C. § 1112(b), a court can dismiss a chapter 11 case or convert it to a case under chapter 7 "for cause". Section 1112(b)(4) provides a non-exclusive enumeration of factors that constitute "cause."

7.    In the Second Circuit, there is cause for dismissal under Section 1112(b) if the debtor filed the case in bad faith. *In re CTC 9th Ave. P'ship v. Norton Co.*, 113 F. 3d. 1304, 1310 (2d Cir. 1997). The decision identified eight factors that were indicative of a bad faith filing:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

*In re CTC 9th Ave. P'ship*, 113 F. 3d. at 1311.

8.    Many of these factors are present in this case.

4

9.      The Premises is the Debtor's only significant asset, which was scheduled for foreclosure on the date the Debtor filed for bankruptcy (See Docket #1, Schedule A). The timing of Debtor's filing evidences intent to delay or frustrate the legitimate efforts of Lender to enforce its rights.

10.     The only creditor holding an unsecured claim is ConEdison, in the amount of $1,000, while there is nearly $500,000 in secured claims (See Docket #1, Schedules D and F). In addition to the secured claim of Lender, scheduled at $479,935.62, there are only two other secured claims: a claim by DEP Water in the amount of $7,000, and a claim by the New York State Department of Taxation and Finance in the amount of $9,6000 (See Docket #1, Schedule D).

11.     Debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can better be resolved in state court.

12.     Debtor has only one employee. See Docket #4.

13.     Furthermore, at the 341 Meeting, it was discovered that there is no rental income with which Debtor can pay the post-petition mortgage payments that become due, nor is the property being marketed for sale. The debtor also acknowledged at the 341a meeting that it will not sell the property. The Debtor has not made a single post petition mortgage payment.

14.     Based on the above, Lender believes there is no reasonable likelihood that Debtor intends to reorganize.

15.     Accordingly, Lender believes the Debtor's bankruptcy case should be dismissed pursuant to 11 U.S.C. § 1112(b).

**CONCLUSION**

5

16.     Based upon the foregoing the Lender respectfully requests that its motion be granted.

**WHEREFORE**, for the foregoing reasons, the Lender respectfully requests that the Motion be granted as set forth herein, including attorney's fees, and that the Lender be granted such other and further relief as is just and proper.

Dated: New York, New York
       April 4, 2012

                                   Respectfully submitted,


                                   By: /s/ Lawrence F. Morrison
                                   Lawrence F. Morrison, Esq.
                                   THE MORRISON LAW OFFICES, PC
                                   287 Spring Street
                                   New York, New York 10013
                                   Telephone: (212) 620-0938

UNITED STATES BANKRUPCTY COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

IN RE:                                          Chapter 11

505 West 150th Street, LLC,                      Case No.: 12-10290-JMP

                    Debtor.
————————————————————————X

## ORDER

Upon the motion, dated April 4, 2012,  (the **"Motion"**) of Lenders Capital, LLC, for an

order, pursuant to 11 U.S.C. § 1112, for dismissal of the above captioned case, and a hearing

having been held on the motion, and for cause shown, it is hereby

ORDERED that the Motion is GRANTED and the above captioned case is hereby

DISMISSED; and it is further

ORDERED, that Debtor is to pay the attorney's fees incurred by Lender in prosecuting

this motion; and it is further

ORDERED that service by United States First Class mail of a copy of this Order and the

Motion upon which it is granted on (a) the United States Trustee; (b) all creditors of the Debtor;

(c) all relevant taxing authorities; and (d) all creditors who have served on the Debtor and have

filed with this Court a request for notice in this case.

Dated: New York, New York
       April ___, 2012

                           _____

                           HONORABLE JAMES M. PECK
                           UNITED STATES BANKRUPTCY JUDGE

7

# EXHIBIT A

<u>**NOTE**</u>

**$350,000.00**
                                                                    **New York, New York**
                                                                    **August 27, 2008**

**FOR VALUE RECEIVED, 505 W 150ᵀᴴ ST LLC**, a New York limited liability company, having an address at 505 West 150ᵗʰ Street, New York, New York 10031 (hereinafter sometimes referred to as "Maker"), hereby agrees to pay to **LENDERS CAPITAL, LLC**, a New York limited liability company, having an office at 20 West 20ᵗʰ Street, Suite 703, New York, New York 10011 ("Payee"), or order, at said office, or at such other place as may be designated, from time to time, in writing by Payee, the principal sum of **THREE HUNDRED FIFTY THOUSAND AND 00/100 ($350,000.00) DOLLARS** in lawful money of the United States of America, with interest on the Principal Balance from the date of this Note to and including the date the Principal Balance is paid in full calculated at the Applicable Interest Rate (hereinafter defined), as follows:

> (i) From the date hereof through September 1, 2010, twenty-four (24) consecutive monthly installments of interest only at the rate of fourteen (14.00%) per centum per annum, representing interest only, due and payable monthly in arrears on the first day of the second month following the execution and delivery of this Note and on the first day of each calendar month thereafter. Each installment shall be applied to the payment in full of interest, each of which monthly installment shall be **$4,083.33**; and

> (ii) Thereafter, the entire Principal Balance, and all other sums due under this Note, shall be due and payable on the Maturity Date or sooner as provided in **Paragraph 2** below.

1.    The following terms as used in this Note shall have the following meanings:

(a)    The term "Maturity Date" shall mean **September 1, 2010.**

(b)    The term "Principal Balance" shall mean the principal balance of this Note outstanding from time to time and at any time.

(c)    The term "Mortgage" shall mean a certain first mortgage dated the date hereof executed by **505 W 150ᵗʰ St LLC**, in favor of Payee constituting a lien on Maker's fee interest in the premises located at 505 West 150ᵗʰ Street, New York, New York (the "Premises").

1

(d)    The term "Applicable Interest Rate" shall mean: (i) from the date hereof through September 1, 2010, a rate per annum equal to fourteen (14.00%) percent.

(e) The term "Event of Default" shall mean the occurrence of a default by Maker hereunder, under the Mortgage, or under any of the Other Security Documents (hereinafter defined) beyond any applicable grace or cure period.

(f) The term "Other Security Documents" shall mean all documents other than this Note and the Mortgage now or hereafter executed by Maker or others, which wholly or partially secure or guarantee payment of the indebtedness evidenced by this Note.

(g)    Intentionally omitted.

2.    It is hereby expressly agreed that the entire unpaid Principal Balance, together with all interest accrued and unpaid thereof and all other sums due under this Note, the Mortgage and the Other Security Documents (herein collectively referred to as the "Debt"), shall without further notice become immediately due and payable at the option of Payee on the happening of any Event of Default or event by which, under the terms of the Mortgage or the Other Security Documents, the Debt may or shall become due and payable, and that all of the terms, covenants and provisions contained in the Mortgage, and the Other Security Documents which are to be kept and performed by Maker are hereby made part of this Note to the same extent and with the same force and effect as if they were fully set forth herein.

3.    (a) Subject to the terms and conditions set forth below and provided there is not an Event of Default, Maker shall have the right at any time and from time to time to prepay in advance of the stated Maturity Date the Principal Balance, in whole or in part, upon at least five (5) business days' prior written notice to Payee. Each partial payment shall be at least $50,000.00. Simultaneously with each prepayment, Maker shall pay to Payee all accrued interest, fees and other charges due to Payee through the prepayment date and the applicable Prepayment Premium (as defined herein).

(b) Each notice of prepayment shall specify the prepayment date (which shall be a business day) and the principal amount to be prepaid, and shall be irrevocable, and shall commit Maker to make such prepayment in the amount and on the date specified in such notice.

2

Z:\CChen Documents\505 - Note v.1.doc

(c) Prepayments shall be applied to the unpaid principal installments of this Note in the inverse order of their regular maturities, shall not affect the duty of Maker to pay all installments when due or change the amount of such installments and shall not affect or impair the right of Payee to pursue all remedies available to Payee under this Note. The Prepayment Premium shall apply to any prepayments, voluntary and involuntary, including those made after acceleration of maturity of this Note. Notwithstanding anything contained herein to the contrary, there shall be no Prepayment Premium payable if all or any portion of the principal balance of this Note is prepaid by reason of Payee's application of either insurance proceeds or a condemnation award, all as more specifically set forth in the Mortgage.

(d) "Prepayment Premium" means an amount equal to: (i) two (2.00%) percent of the amount being repaid, either in whole or in part, if the same is repaid on or before the first six (6) months of the date of execution; (ii) one percent (1.00%) of the amount being repaid, either in whole or in part, if the same is repaid after the first six (6) months and before twelve (12) months of the date of execution. Notwithstanding the foregoing, there shall be no Prepayment Premium if the Loan is prepaid after the twelfth (12th) month and prior to the Maturity Date.

4.       If any portion of the Debt is not paid within ten (10) days after the date on which it is due, Maker shall pay to Payee upon demand an amount equal to five percent (5%) of such unpaid portion as a late payment charge. Funds received from the Maker will be applied first to payment of interest accrued and unpaid on the Principal Balance, then to reduction of the Principal Balance and then to the late fee. It is expressly agreed that such late charge is to compensate Payee for costs incurred in connection with the administration of such default, and does not constitute a penalty. In addition, if Maker shall fail to make timely payment in full of any sum payable under the Note, Maker shall pay all costs of collection, including, but not limited to, reasonable attorneys' fees and disbursements, whether or not suit is filed thereon.

5.       In addition to any late payment charge which may be due under this Note, if there is an Event of Default, or if the Debt is declared immediately due and payable by Payee, pursuant to the provisions of this Note, the Mortgage or the Other Security Documents or if the Debt is not paid in full on the Maturity Date, Maker shall thereafter pay interest on the Principal Balance from the date of such Event of Default, declaration, or the Maturity Date, as the case may be, until the date the Principal Balance is paid in full at a rate per annum equal to the lower of (i) twenty-four (24%) percent or (ii) the maximum interest rate which Maker may by law pay.

3

6.    Maker shall establish a non-interest bearing deposit account with Payee in an amount equal to ten (10) months' interest on the Debt (as that term is defined in the Mortgage) and from which Payee is authorized to withdraw from the account the first ten (10) payments due as provided for in this Note.

7.    Maker hereby waives presentment and demand for payment, notice of dishonor, protest and notice of protest of this Note and all other notices and demands of any nature whatsoever and agrees to pay all costs of collection when incurred, including attorneys' fees and disbursements (which costs may be added to the amount due under this Note) and to perform and comply with each of the terms, covenants and provisions contained in this Note, the Mortgage, and the Other Security Documents on the part of Maker to be observed or performed. No release of any security for the Principal Balance or extension of time for payment of this Note, or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage, or the Other Security Documents made by agreement between Payee and any other person or party shall release, discharge, modify, change or affect the liability of Maker under this Note, the Mortgage, or the Other Security Documents.

8.    This Note is subject to the express condition that at no time shall Maker be obligated or required to pay interest on the Principal Balance at a rate which could subject Payee to either civil or criminal liability as a result of being in excess of the maximum rate which Maker is permitted by law to contract or agree to pay. If by the terms of this Note Maker is at any time required or obligated to pay interest on the Principal Balance at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the Principal Balance.

9.    Each payment on this Note, including each prepayment of any portion of the Principal Balance and any payment of interest, shall be made by Maker to Payee at Payee's offices at Lenders Capital, LLC, 20 West 20th Street, Suite 703, New York, New York 10011, in available funds, by 3:00 P.M., New York time, on the due date for such payment. The failure of Maker to make any such payment by the aforesaid time shall not constitute a default hereunder, but any such payment received by Payee after 3:00 P.M., New York time, on such due date shall be deemed to have been made on the next business day for the purpose of calculating interest on the Principal Balance. If any payment under this Note shall be due and payable on a day which is not a business day, the maturity thereof shall be extended to the next business day and interest shall be payable at the Applicable Interest Rate during such extension.

4

10.    Principal, interest, and all other sums payable under the Note shall be paid in lawful money of the United States in immediately available funds, free and clear of, and without deduction or offset for, any present or future taxes, levies, imposts, charges, withholdings, or liabilities with respect thereto, and free and clear of any and all other defenses, offsets, claims, counterclaims, credits or deductions of any kind.

11.    The payment by Maker of any late payment charge or installment of interest at the Default Rate is intended by the parties hereto to represent a non-exclusive remedy of payment of an agreed amount as compensation to said holder with respect to costs and expenses incurred or damage suffered by said holder as a result of Maker's prepayment of the Note or failure to comply with one or more obligations imposed upon Maker in the Note, the Mortgage or Other Security Documents, and any such payment shall be in addition to, and not in lieu of, such other rights and remedies.

12.    Payee shall have the right, exercisable at any time and from time to time, to sell, transfer or assign this Note, or grant participations therein, or issue certificates or securities evidencing a beneficial interest therein in a rated or unrated public offering or private placement, and Payee may forward to any purchaser, transferee, assignee, servicer, participant, investor or credit rating agency rating such securities (collectively, an "Investor") or prospective Investor all documents and information in Payee's possession with respect to Maker as such Investor or prospective Investor may request. No prospective Investor shall be provided with any information concerning the financial condition of Maker or the Premises unless such prospective Investor shall have executed a confidentiality agreement, satisfactory in form and substance to Payee, in favor of Payee.

13.    If Maker comprises more than one person or entity, the liability of each such person or entity for the performance of Maker's obligations under this Note shall be joint and several. If there is more than one Maker, the term "Maker" shall be deemed to refer to each of them, as well as to all of them.

14.    This Note is secured by the Mortgage and the Other Security Documents.

15.    The terms of this Note shall be governed and construed under the laws of the State of New York without regard to its principles of conflicts or choice of law rules.

16.    This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of such change or termination is sought. No delay on the part of the holder of this Note in exercising any rights hereunder shall operate as a waiver of such rights.

5

Z:\CCohen Documents\505 - Note v.1.doc

17.   Maker (and the undersigned representative of Maker) represents that Maker has full power, authority and legal right to execute and deliver this Note and that the Debt constitutes a valid and binding obligation of Maker.

18.   Whenever used, the singular number shall include the plural, the plural the singular, and the words "Payee" and "Maker" shall include their respective successors and assigns.

**IN WITNESS WHEREOF**, Maker has duly executed this Note as of the day and year first above written.

505 W 150TH ST LLC

By: _____
Name: _____
Its: _____

by _____
as Attorney in Fact by virtue of Power of Attorney to be recorded simultaneously herewith.

State of New York   )
                    ) .ss:
County of New York  )

On the 21 day of _____August_____ in the year 2008 before me, the undersigned, personally appeared __Yorano A. Cerzen__ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

E. VICKY KRYONERIS
NOTARY PUBLIC, State of New York
No. 01KR6089064
Qualified in Nassau County
Commission Expires March 17, 2011

6

Z:\CChen Documents\505 - Note v.1.doc

505 W 150th ST LLC

TO

LENDERS CAPITAL, LLC

---

## MORTGAGE AND SECURITY AGREEMENT

Dated:                August 27, 2008

This Mortgage does not cover real property principally improved or to be improved by one or more structures containing in the aggregate six (6) residential dwelling units each having their own separate cooking facilities.

This instrument affects real and personal property situated, lying, and being in the Borough of Manhattan, County of New York, State of New York, known as follows:

Property Address:

505 West 150th Street
New York, New York

Block:            2082
Lot:              26
County:           New York

PLEASE RECORD AND RETURN TO:

James P. Prince, Esq.
20 West 20th Street, Suite 703
New York, New York 10011

# MORTGAGE AND SECURITY AGREEMENT
## (Fee)

THIS MORTGAGE AND SECURITY AGREEMENT ("Mortgage") made the 27th day of August, 2008 between 505 W 150TH ST LLC a New York limited liability company having an address at 505 West 150th Street, New York, New York 10031 ("Mortgagor") and LENDERS CAPITAL, LLC, a New York limited liabiltity company, having an office at 20 West 20th Street, Suite 703, New York, New York 10011 ("Mortgagee"),

## WITNESSETH:

To secure the payment of an indebtedness in the principal sum of THREE HUNDRED FIFTY THOUSAND AND 00/100 ($350,000.00) DOLLARS, lawful money of the United States of America, to be paid with interest (said indebtedness, interest and all other sums which may or shall become due hereunder being hereinafter collectively referred to as the "Debt" or the "Loan") according to a certain note dated the date hereof executed by Mortgagor in favor of Mortgagee (the "Note"), Mortgagor has mortgaged, granted, sold, conveyed and assigned, and by these presents does mortgage, grant, sell, convey and assign unto Mortgagee all right, title and interest of Mortgagor now owned, or hereafter acquired, in and to the property described in Schedule A attached hereto (the "Premises"), the buildings and improvements now or hereafter located thereon (the "Improvements") and the following property, rights and interests (the Premises, the Improvements and such property, right and interest, being hereinafter collectively referred to as the "Mortgaged Property"):

(a) all easements, rights-of-way, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Mortgaged Property, together with all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof,

(b) all machinery, equipment, fixtures and other property (collectively, the "Equipment"), used with or located on the Premises, including Equipment which may be subject to any security agreements (as defined in the Uniform Commercial Code of the State of New York (the "UCC") superior in lien to the lien of this Mortgage;

(c) all awards or payments, including interest, and the right to receive the same, which may be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu thereof) or for any other injury to or decrease in the value of the Mortgaged Property;

(d) all leases and other agreements affecting the use or occupancy of the Mortgaged Property now or hereafter entered into and the right to receive and apply the rents, issues and profits of the Mortgaged Property (the "Rents") to the payment of the Debt;

2

(e) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property, together with all rights to obtain and receive a refund or abatement of taxes or other municipal charges against the Mortgaged Property;

(f) the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property; and

(g) all agreements, franchises, permits, applications, certificates and contractual rights and benefits relating to the use, occupation, development, subdivision, or operation of the Mortgaged Property or any business or activity conducted by or on behalf of Mortgagor on or at the Mortgaged Property, including, without limitation, all beneficial rights and interests under or pursuant to any governmental or private grants, subsidies or aid programs.

**TO HAVE AND TO HOLD** the Mortgaged Property unto and to the proper use and benefit of Mortgagee, its successors and assigns, forever.

**PROVIDED, ALWAYS,** and these presents are upon this express condition, if Mortgagor shall well (a) pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and (b) comply with all covenants and conditions set forth herein and in the Note, these presents and the estate hereby granted shall terminate.

**AND** Mortgagor covenants with and represents and warrants to Mortgagee as follows:

1.    **Payment of Debt.** Mortgagor will pay the Debt at the time and in the manner provided for its payment in the Note, this Mortgage and any other mortgages, instruments or documents evidencing, securing or guaranteeing, in whole or in part, payment of the Debt (collectively, the "Other Security Documents").

2.    **Late Payment Charge.** If any portion of the Debt is not paid within ten (10) days after the date on which it is due, Mortgagor, jointly and severally, shall pay to Mortgagee upon demand a late payment charge of five percent (5%) of any unpaid amount as a late payment charge to defray the expenses incurred by Mortgagee in handling and processing such delinquent payments, which amount Mortgagor agrees is reasonable. Such amount shall be secured by this Mortgage.

3.    **Warranty of Title.** Mortgagor warrants the title to the Premises, the Improvements and the Equipment. Mortgagor covenants to preserve such title, and will forever warrant and defend such title to Mortgagee and the validity and priority of the lien hereof against the claims of all persons and shall not do or permit anything to be done which may impair the lien of this Mortgage or the value of the Mortgaged Property.

3

4.    **Insurance.**

(a) Mortgagor will maintain the following policies of insurance (the "Policies") issued by insurers lawfully doing business in the State of New York and rated "A" or better by A.M. Best & Co. or other nationally recognized service satisfactory to Mortgagee:

(i)    property and casualty insurance covering the Improvements and the Equipment against loss or damage by fire, standard extended coverage perils (including, vandalism and malicious mischief coverage) and such other hazards as Mortgagee shall from time to time require in amounts approved by Mortgagee and indicating replacement cost coverage, but in no event less than the maximum potential principal amount of the Debt or in excess of the aggregate 100% of the full insurable value of the Improvements and the Equipment, but in any event in amounts sufficient to meet all applicable co-insurance requirements and not less than $600,000 for, and containing the standard New York mortgagee non-contribution clause endorsement or an equivalent endorsement satisfactory to Mortgagee naming Mortgagee as the person to which all payments made by such insurance company shall be paid and all other insurance shall name Mortgagee as an additional insured;

(ii)    at the option of the Mortgagee, a builder's all risk/completed value policy during the duration of the performance of construction and/or alteration to the Mortgaged Property or any part thereof in an amount equal to the full insurable value of the Mortgaged Property against such risks (including, without limitation, fire and extended coverage and collapse of the Improvements to agreed limits) as Mortgagee may request, in form and substance acceptable to Mortgagee or deemed sufficient by Mortgagee in order to protect its interests;

(iii)    comprehensive general public liability insurance (including coverage for operations of independent contractors engaged in construction on or about the Premises and automobile liability coverage) against claims for bodily injury, death or property damage occurring on, in or about the Premises and the adjoining streets, sidewalks and areas in minimum amounts of $2,000,000 for the death of or injury to one person, $2,000,000 for death or bodily injury in connection with each occurrence, and $2,000,000 for property damage in connection with each occurrence;

(iv)    worker's compensation insurance coverage in the amount of the full statutory liability of Mortgagor or its affiliates, subsidiaries or divisions;

(v)    if the Premises or any part thereof are in an area designated as a special flood hazard area pursuant to the Flood Disaster Protection Act of 1973 or other applicable law, flood hazard insurance in the maximum amount available or the insurable value of the Premises, whichever is less (the "Flood Insurance");

4

Z:\CChen Documents\505- Mortgage v.1.doc

(vi) rental and business interruption insurance in amounts approved by Mortgagee, but in no event less than an amount sufficient to pay Mortgagor's total rental income and receipts for a period of one (1) year, including increases as may be determined from time to time;

(vii) such other insurance against such loss, damage and liability, including, without limitation, liability to third parties, as is customary with companies in the same or similar business of Mortgagor or as Mortgagee shall from time to time require in amounts approved by Mortgagee; and

(viii) such other insurance(s) as may be required under the Prior Mortgage (as hereinafter defined).

(b)    The Policies shall be delivered to and held by Mortgagee, shall provide that all losses are payable to Mortgagee under a New York Standard Mortgagee endorsement and shall also contain provisions requiring that Mortgagee receive copies of all notices under the Policies at the same time as such notices are sent under the Policies to Mortgagor. Mortgagor shall pay the premiums for the Policies as the same become due and payable. At the request of Mortgagee, Mortgagor will assign and deliver the Policies to Mortgagee. Not later than thirty (30) days prior to the expiration date of each of the Policies, Mortgagor will deliver to Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment of premium satisfactory to Mortgagee. If at any time Mortgagee is not in receipt of written evidence that all insurance required hereunder is in force and effect, Mortgagee shall have the right (but not the obligation), without notice to Mortgagor, to take such action as Mortgagee deems necessary to protect its interest in the Mortgaged Property, including the obtaining of such insurance coverage as Mortgagee in its discretion deems appropriate, and all expenses incurred by Mortgagee in connection with such action shall be paid by Mortgagor to Mortgagee upon demand.

(c)    If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor shall give prompt notice thereof to Mortgagee. Mortgagor shall file any claims required in connection with any fire or other casualty and shall keep Mortgagee informed as to the status thereof. Sums paid to Mortgagee by any insurer may be retained and applied by Mortgagee toward payment of the Debt, whether then due and payable, in such priority and proportions as Mortgagee in its discretion shall deem proper or, at the discretion of Mortgagee, the same may be paid, either in whole or in part, to Mortgagor for such purposes as Mortgagee shall designate. Mortgagor will not permit any condition to exist on the Mortgaged Property that would wholly or partially invalidate the Policies.

5.    **Payment of Taxes, etc.** Mortgagor shall pay all taxes, assessments, water rates, sewer rents and other charges, or payments in lieu thereof, including vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed against the Mortgaged Property (collectively, the "Taxes") prior to the date upon which any fine, penalty, interest or cost may be added thereto or imposed by law for the nonpayment thereof. Mortgagor shall deliver to Mortgagee, receipted bills, canceled checks and other evidence satisfactory to

5

Mortgagee evidencing the payment of the Taxes prior to the date upon which any fine, penalty, interest or cost may be added thereto or imposed by law for the nonpayment thereof

6.    **Escrow Fund.**

(a)    Mortgagor will deposit with Mortgagee, in escrow, on the first day of each calendar month one-twelfth of an amount (the "Tax Escrow Fund") which would be sufficient to pay the Taxes payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months. Mortgagee will apply the Tax Escrow Fund to the payment of Taxes which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage. If the amount of the Tax Escrow Fund shall exceed the amount of the Taxes payable by Mortgagor pursuant to the provisions of this Mortgage, Mortgagee shall, in its discretion, either return any excess to Mortgagor or credit such excess against future payments to be made to the Tax Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Tax Escrow Fund is not sufficient to pay the Taxes as the same become payable, Mortgagor shall pay to Mortgagee, upon demand, an amount which Mortgagee shall estimate in its opinion as sufficient to make up the deficiency so that, at least thirty (30) days prior to the date such Taxes are due, there will be sufficient funds in the Tax Escrow Fund to pay such Taxes. Until expended or applied as above provided, any amounts in the Tax Escrow Fund may be commingled with the general funds of Mortgagee and shall constitute additional security for the Debt and shall not bear interest unless and then only to the extent required by law. Mortgagor shall be required at all times to maintain in the Tax Escrow Fund an amount equal to not less than two (2) months' payment of Taxes.

(b)    Mortgagor will deposit with Mortgagee, in escrow, on the first day of each calendar month one-twelfth of an amount (the "Insurance Escrow Fund") which would be sufficient to pay the premiums on any Policies payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months. Mortgagee will apply the Insurance Escrow Fund to the payment of the premiums on the Policies which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage. If the amount of the Insurance Escrow Fund shall exceed the amount of the premiums on the Policies payable by Mortgagor pursuant to the provisions of this Mortgage, Mortgagee shall in its discretion, either return any excess to Mortgagor or credit such excess against future payments to be made to the Insurance Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Insurance Escrow Fund is not sufficient to pay the premium on the Policies as the same become payable, Mortgagor shall pay the Mortgagee, upon demand, an amount which Mortgagee shall estimate in its opinion as sufficient to make up the deficiency so that, at least thirty (30) days prior to the date such premiums are due, there will be sufficient funds in the Insurance Escrow Fund to pay such premiums. Until expended or applied as above provided, any amounts in the Insurance Escrow Fund may be commingled with the general funds of Mortgagee and shall constitute additional security for the Debt and shall not bear interest unless and then only to the extent required by law.

6

(c)    If the Premises or any part thereof are in an area currently designated or hereinafter designated as a special flood hazard area pursuant to the Flood Disaster Protection Act of 1973 or other applicable law, and if so requested by Mortgagee, Mortgagor will pay to Mortgagee on the first day of each calendar month one-twelfth of an amount (the "Flood Hazard Insurance Escrow Fund") which would be sufficient to pay the premiums on a flood hazard insurance policy (the "Flood Hazard Insurance Policy") payable, or estimated by Mortgagee to be payable, during the ensuing twelve (12) months. Mortgagee will apply the Flood Hazard Insurance Escrow Fund to the payment of the premiums on the Flood Hazard Insurance Policy which are required to be paid by Mortgagor pursuant to the provisions of this Mortgage. If the amount of the Flood Hazard Insurance Escrow Fund shall exceed the amount of the premiums on the Flood Hazard Insurance Policy payable by Mortgagor pursuant to the provisions of this Mortgage, Mortgagee shall in its discretion, either return any excess to Mortgagor or credit such excess against future payments to be made to the Flood Hazard Insurance Escrow Fund. In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property. If the Flood Hazard Insurance Escrow Fund is not sufficient to pay the premium on the Flood Hazard Insurance Policy as, the same become payable, Mortgagor shall pay the Mortgagee, upon demand, an amount which Mortgagee shall estimate in its opinion as sufficient to make up the deficiency so that, at least thirty (30) days prior to the date such premiums are due, there will be sufficient funds in the Flood Hazard Insurance Escrow Fund to pay such premiums. Until expended or applied as above provided, any amounts in the Flood Hazard Insurance Escrow Fund may be commingled with the general funds of Mortgagee and shall constitute additional security for the Debt and shall not bear interest unless and then only to the extent required by law.

(d) If the same are required to be maintained as above set forth, Mortgagor shall be obligated at all times to maintain in the Tax Escrow Fund, the Insurance Escrow Fund, and the Flood Hazard Insurance Fund an amount equal to at least two months' payments for the Taxes and the Premiums on the Policies, as the case may be.

7.    **Condemnation.** Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise, Mortgagor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and this Mortgage and the Debt shall not be reduced or discharged until any award, payment, compensation or damages therefor (collectively, the "Award") shall have been actually received and applied by Mortgagee to the reduction or discharge of the Debt. Mortgagee may apply the Award to the reduction or discharge of the Debt whether or not then due and payable in such priority and proportions as Mortgagee in its discretion shall deem proper. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of the Award, Mortgagee shall have the right, whether or not a deficiency judgment on the Note or the Other Security Documents shall have been sought recovered or denied, to receive the Award, or a portion thereof sufficient to pay the full amount of the Debt, whichever is less. Mortgagor shall file and prosecute its claim or claims for any such award, payment compensation or damages in good faith and with due diligence and cause the same to be collected and paid to Mortgagee, and hereby irrevocably authorizes and empowers Mortgagee, in the name of Mortgagor or otherwise, to collect and receive the Award and to file and prosecute such claim or claims, and although it is hereby expressly agreed that the same shall not be necessary in any event, Mortgagor shall, upon demand of

7

Mortgagee, make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning any Award to Mortgagee, free and clear of any prior claims, liens or encumbrances.

8.    **Leases and Rents.** Subject to the terms of this paragraph, Mortgagee waives the right to enter the Mortgaged Property to collect the Rents and grants Mortgagor the right to collect the Rents. Mortgagor shall hold the Rents, or an amount sufficient to discharge all current sums due on the Debt, in trust for use in payment of the Debt. The right of Mortgagor to collect the Rents may be revoked by Mortgagee upon the occurrence of a default under the Note or this Mortgage by giving notice of such revocation to Mortgagor. Following such notice, Mortgagee may retain and apply the Rents, in its sole discretion, toward payment of the Debt in such priority and proportions as Mortgagee, in its discretion, shall deem proper, or to the operation, maintenance and repair of the Mortgaged Property. Mortgagor shall not, without the prior express written consent of Mortgagee, make, or suffer to be made, any Leases or cancel or modify any Leases or accept prepayments of installments of the Rents for a period more than one (1) month in advance or further assign the whole or any part of the Rents. Mortgagee shall have all the rights against tenants of the Mortgaged Property set forth in Section 291-f of the Real Property Law of New York. Mortgagor shall perform each and every provision of the Leases on the part of Mortgagor to be performed, promptly send to Mortgagee copies of all notices of default which Mortgagor shall send or receive under the Leases, and enforce, short of termination of the Leases, the performance of the provisions thereof by the tenants thereunder. In addition, upon the occurrence of an Event of Default under the Note or this Mortgage, Mortgagee, at its option, may require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be in possession of Mortgagor and/or Mortgagor's affiliated persons or entities. Upon default in any such payment, Mortgagor (and/or its affiliated persons or entities) will vacate and surrender possession of the Mortgaged Property to Mortgagee, or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise. Notwithstanding the foregoing, no rights as a tenant shall be deemd to be granted Mortgagor and/or its affiliated persons or entities, it being expressly understood that the use and occupancy shall be terminable by a foreclosure or sale of the Mortgaged Property following a default hereunder.    Nothing contained in this paragraph shall be construed as imposing on Mortgagee any of the obligations of the lessor under the Leases or any obligation to take any action to collect or enforce payment of any Rents, or to relet any vacant space.

9.    **Maintenance of the Mortgaged Property.** Mortgagor shall cause the Mortgaged Property to be maintained in good condition and repair and will not commit or suffer to be committed any waste of the Mortgaged Property. All repairs made by Mortgagor shall be at least equal in quality and class to the original work. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the prior express written consent of Mortgagee. Mortgagor shall promptly comply with all existing and future governmental laws, orders, ordinances, rules and regulations affecting the Mortgaged Property, or the use thereof, and shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be damaged or destroyed by any casualty (including any casualty for which insurance was not obtained or obtainable) or which may be affected by any taking by any public or quasi-public authority through eminent domain or otherwise, and shall complete and pay for, within a reasonable time, any structure at any time in the process of construction or repair on the Premises. If such casualty shall be covered by the Policies, Mortgagor's obligation to repair, replace or rebuild

8

such portion of the Mortgaged Property shall be contingent upon Mortgagee paying Mortgagor the proceeds of the Policies, or such portion thereof as shall be sufficient to complete such repair, replacement or rebuilding, whichever is less. Mortgagor will not, without obtaining the prior express written consent of Mortgagee, initiate, join in or consent to any private restrictive covenant, zoning ordinance, or other public or private restrictions, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.

10.    **Environmental Matters.**

(a)    Mortgagor represents and warrants to Mortgagee that to the best of Mortgagor's knowledge after diligent inquiry no "Hazardous Material" as defined in or regulated under any statute, law, rule, regulation, ordinance or directive of any municipal, state or federal governmental orjudicial authority addressing environmental, health or safety issues ("Environmental Requirements") is currently located at or about the Mortgaged Property, no Hazardous Material has been located at, under or about the Mortgaged Property in a manner which violates any Environmental Requirement or requires cleanup or corrective action under any Environmental Requirement, no releasing, emitting, discharging, leaching, dumping or disposing of any Hazardous Material from the Mortgaged Property to any other property or from any other property to the Mortgaged Property has occurred in violation of any Environmental Requirement, and no notice of violation, lien, complaint, suit, order or other notice with respect to the environmental condition of the Mortgaged Property is outstanding, nor has any such notice been issued which has not been fully complied with in a timely fashion. For the purposes of this paragraph term "diligent inquiry" means a level of inquiry at least equal to any environmental site assessment of the Mortgaged Property conducted in accordance with Mortgagee's environmental policies and procedures. Supplementing the definition of "Hazardous Material" in the first sentence of this paragraph, the term "Hazardous Material" as used herein shall include, without limitation, gasoline, petroleum products, explosives, radioactive material, polychlorinated biphenyls, lead paint or related or similar materials.

(b)    Mortgagor shall comply, and shall cause all tenants or other occupants of the Mortgaged Property to comply, in all respects with all present and future Environmental Requirements, and will not, and will not permit any tenant or other occupant of the Mortgaged Property to, generate, store, handle, process, dispose of or otherwise use, Hazardous Materials at, under or about the Mortgaged Property in a manner that might lead to the imposition on Mortgagor, Mortgagee or the Mortgaged Property of any liability or lien under any Environmental Requirement. If at any time it is determined that the operation or use of the Mortgaged Property violates any Environmental Requirement or that there are Hazardous Materials located at, under or about the Mortgaged Property which, under any Environmental Requirement, require special handling in collection, storage, treatment or disposal, or any other form of cleanup or corrective action, Mortgagor shall, within thirty (30) days after receipt of notice thereof from any governmental authority (or such lesser period of time as is mandated in the notice from the governmental authority) or from Mortgagee, take, at its sole cost and expense, such actions as may be necessary to fully comply with all Environmental Requirements, provided, however, that if such compliance cannot reasonably be completed within such thirty (30) day period, Mortgagor shall commence such necessary action within such

9

thirty (30) day period and shall thereafter diligently and expeditiously proceed to fully comply with all Environmental Requirements.

(c)    Mortgagor shall notify Mortgagee promptly in the event of any spill or other release of any Hazardous Material which is required, to be reported to a governmental or judicial authority under any Environmental Requirement, will promptly forward to Mortgagee copies of any notices received by Mortgagor relating to alleged violations of any Environmental Requirement and will promptly pay when due any fine or assessment against Mortgagee, Mortgagor or the Mortgaged Property relating to any Environmental Requirement.

(d)    If a lien is filed against the Mortgaged Property by any governmental authority resulting from an actual or anticipated expenditure of monies arising from an action or omission, whether intentional or unintentional, of Mortgagor or for which Mortgagor is responsible, resulting in the releasing, spilling, leaking, leaching, pumping, emitting, pouring, emptying or dumping of any Hazardous Material into the waters or onto land located within or without the State of New York, then Mortgagor will, within thirty (30) days from the date that Mortgagor is first given notice that such lien has been placed against the Mortgaged Property (or within such shorter period of time as may be specified by Mortgagee if such governmental authority has commenced steps to cause the Mortgaged Property to be sold pursuant to such lien) either pay the claim and remove the lien or furnish a cash deposit, bond, or such other security reasonably satisfactory to Mortgagee and sufficient to effect a complete discharge of such lien on the Mortgaged Property.

(e)    If Mortgagee reasonably believes that a Hazardous Material or other environmental condition affecting the Mortgaged Property violates or threatens to violate any Environmental Requirement or if there has been an Event of Default, it may cause an environmental audit of the Mortgaged Property or a portion thereof to be conducted to confirm Mortgagor's compliance with the provisions of this paragraph, and Mortgagor shall cooperate in all reasonable ways with Mortgagee in connection with any such audit and shall pay all costs and expenses incurred in connection therewith.

(f)    Mortgagor will defend, indemnify, and hold harmless Mortgagee, its employees, agents, officers, and directors, from and against any and all claims, demands, penalties, causes of action, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, known or unknown, foreseen or unforeseen, contingent or otherwise (including counsel and consultant fees and expenses, investigation and laboratory fees and expenses, court costs, and litigation expenses) arising out of, or in any way related to, any breach by Mortgagor of any of the provisions of this paragraph, the presence, disposal, spillage, discharge, emission, leakage, release, or threatened release of any Hazardous Materials at, under or affecting the Mortgaged Property, including any damage or injury resulting from any such Hazardous Material to or affecting the Mortgaged Property or the soil, water, air, vegetation, buildings, personal property, persons or animals located on the Mortgaged Property, any lawsuit brought or threatened, settlement reached, or order or directive of or by any governmental or judicial authority relating to such Hazardous Material, or any violation of any Environmental Requirement

10

or any policy or requirement of Mortgagee hereunder. This indemnification shall, notwithstanding any exculpatory or other provision to the contrary set forth in the Note, this Mortgage or any Other Security Document constitute the personal recourse liability of Mortgagor..

(g)    The obligations and liabilities of Mortgagor under this paragraph shall survive and continue in full force and effect and shall not be terminated, discharged or released, in whole or in part, irrespective of whether the Debt has been paid in full and irrespective of any foreclosure of this Mortgage or acceptance by Mortgagee, its nominee or wholly owned subsidiary of a deed or assignment in lieu of foreclosure and irrespective of any other fact or circumstance.

11.    **Estoppel Certificates.** Mortgagor, within ten (10) days after request by Mortgagee and at its expense, will furnish Mortgagee with a statement, duly acknowledged and certified, setting forth the amount of the Debt and the offsets or defenses thereto, if any.

12.    **Transfer or Encumbrance of the Mortgaged Property.** No part of the Mortgaged Property, including, without limitation, any air rights or development rights, and no shares of stock, limited liability company, partnership or other interests in or of Mortgagor, or operating control or management thereof, directly or indirectly, shall in any manner be further encumbered, sold, transferred or conveyed, or permitted to be further encumbered, sold, transferred or conveyed, without the prior express written consent of Mortgagee. Mortgagor will not pledge, transfer, convey or otherwise encumber any of its assets, real, personal or otherwise, without the express prior written consent of Mortgagee, which consent may be granted or withheld by Mortgagee in its sole discretion. This paragraph shall apply to each and every such further encumbrance, sale, transfer or conveyance, regardless of whether Mortgagee has consented to, or waived by its action or inaction its rights hereunder with respect to, any such previous further encumbrance, sale, transfer or conveyance.

13.    **Sale of Mortgaged Property.** If this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may, at the discretion of Mortgagee, be sold in one or more parcels or in several interests or portions and in any order or manner.

14.    **Right of Entry.** Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times.

15.    **Books and Records.** Mortgagor will keep and maintain or will cause to be kept and maintained on a fiscal year basis in accordance with accounting practices consistently applied proper and accurate books, records and accounts reflecting all of the financial affairs of Mortgagor and all items of income and expense in connection with the operation of the Mortgaged Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Mortgaged Property, whether such income or expenses are realized by Mortgagor or by any other person except lessees unrelated to and unaffiliated with Mortgagor. Mortgagee shall have the right from time to time at all times during normal business hours to examine such books, records and accounts at the office of Mortgagor or other person maintaining such books, records and accounts and to make copies or extracts thereof as Mortgagee desires.

11

16.    **Financial Statements.** Mortgagor will furnish Mortgagee (a) within one hundred twenty (120) days after the end of each fiscal year, annual reviewed financial statements of Mortgagor, and any Guarantor,(as hereinafter defined) for such fiscal year prepared by an independent certified public accountant acceptable to Mortgagee and certified to by a duly authorized representative of Mortgagor, and any Guarantor as being true, complete and accurate, and containing a fully itemized statement of profit and loss and of surplus and a balance sheet and otherwise in form and substance satisfactory to Mortgagee; (b) within the earlier of one hundred twenty (120) days after the end of each fiscal year or fifteen (15) days after filing, the federal and state income tax returns of the Mortgagor and any Guarantor; (c) within one hundred twenty (120) days after the end of each calendar year, the financial statements of the Guarantor (if any) in form reasonably satisfactory to Mortgagee; (d) within thirty (30) days after the end of each calendar quarter, a certified rent roll and operating statement for the Mortgaged Property and a certified copy of any new leases entered into during such quarter; (e) notice of the commencement of any lawsuits initiated against Mortgagor, or Guarantor (if any) where the amount of the potential exposure is $25,000 or more, whether or not the same is, or is believed to be covered by insurance; (f) notice of the commencement of any proceedings, sanctions or warnings instituted against Mortgagor, or Guarantor (if any), or issued to either of them, by any regulatory agency or governmental authority, (g) notice of any application for an extension of time to file the federal, state or local income tax returns of Mortgagor, or Guarantor (if any) and notice of any such extension received; and (h) such other financial information with respect to the Mortgagor, or the Guarantor (if any) as may be requested by the Mortgagee from time to time.

17.    **Changes in Laws Regarding Taxation.** In the event of the passage after the date of the Mortgage of any law of the State of New York deducting from the value of real property for the purpose of taxation any lien or encumbrance thereon or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for state or local purposes or the manner of the collection of any such taxes, and imposing a tax, either directly or indirectly, on the Mortgage, the Note, this Agreement or the Debt, Mortgagor shall if permitted by law, pay any tax imposed as a result of any such law within the statutory period or within fifteen (15) days after demand by Mortgagee, whichever is less, provided; however, that if, in the opinion of the attorneys for Mortgagee, Mortgagor is not permitted by law to pay such taxes, Mortgagee shall have the right, at its option, to declare the Debt due and payable on a date specified in a notice given to Mortgagee not less than thirty (30) days prior to such specified date.

18.    **No Credits on Account of the Debt.** Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes assessed against the Mortgaged Property or any part thereof and no deduction shall otherwise be made or claimed from the taxable value of the Mortgaged Property, or any part thereof, by reason of this Mortgage, the Note or the Debt.

19.    **Offsets, Counterclaims and Defenses.** Any assignee of this Mortgage, the Note and the Other Security Documents shall take the same free and clear of all offsets, counterclaims or defenses of any nature whatsoever which Mortgagor may have against any assignor of this Mortgage, the Note and the Other Security Documents and no such offset, counterclaim or defense shall be interposed or asserted by Mortgagor in any action or proceeding brought by any such assignee upon this Mortgage, the Note or the Other Security Documents and any such right to

12

interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Mortgagor.

20. **Other Security for the Debt.** Mortgagor shall observe and perform all of the terms, covenants and provisions contained in the Note, this Mortgage, the Other Security Documents and in all other mortgages and other instruments or documents evidencing, securing or guaranteeing payment of the Debt, in whole or in part, or otherwise executed and delivered in connection with the Note, this Mortgage, the Other Security Documents or the loan evidenced and secured thereby.

21. **Documentary Stamps.** If at any time the United States of America, any state thereof or any governmental subdivision of any such state, shall require revenue or other stamps to be affixed to the Note, this Mortgage, the Other Security Documents, Mortgagor will pay for the same, with interest and penalties thereon, if any.

22. **Absolute and Unconditional Obligation.** Mortgagor acknowledges that Mortgagor's obligation to pay the Debt in accordance with the provision of the Note and this Mortgage is and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which may otherwise constitute. a. defense to the Note or this Mortgage or the obligation of Mortgagor thereunder to pay the Debt or the obligations of any other person relating to the Note or this Mortgage or the obligation of Mortgagor under the Note, this Mortgage, or otherwise with respect to the loan secured hereby, and Mortgagor absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or crosselaim of any nature whatsoever with respect to the obligation of Mortgagor to pay the Debt in accordance with the provisions of the Note, this Mortgage, or the obligations of any other person relating to the Note, this Mortgage, or obligations of Mortgagor under the Note, this Mortgage, or otherwise with respect to the loan secured hereby in any action or proceeding brought by Mortgagee to collect the Debt, or any portion thereof, or to enforce, foreclose and realize upon the lien and security interest created by this Mortgage or any other document or instrument securing repayment of the Debt, in whole or in parL

23. **Performance of Other Agreements.** Mortgagor shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

24. **Defaults.** The Debt shall become due at the option of Mortgagee upon the occurrence of any one of the following events (each, an "Event of Default"):

(a)    if any portion of the Debt is not paid when due;

(b)    if Mortgagor shall fail to pay within ten (10) days of notice and demand by Mortgagee any installment of any assessment against the Mortgaged Property for local improvements heretofore or hereafter laid, which assessment is or may become payable in annual or periodic installments and is or may become a lien on the Mortgaged Property, notwithstanding the fact that such installment may not be due and payable at the time of such notice and demand;

13

Z:\CChen Documents\505- Mortgage v.1.doc

(c)    if any Federal tax lien is filed against Mortgagor, or the Mortgaged Property and the same is not discharged of record within twenty (20) days;

(d)    subject to the terms hereof, if without the consent of Mortgagee any part of the Mortgaged Property or any interest therein, directly or indirectly, or any interest in the Mortgagor is in any manner farther encumbered, sold, transferred or conveyed, directly or indirectly, or if any Improvement or the Equipment (except for normal replacement of the Equipment) is removed, demolished or materially altered, or if the Mortgaged Property is not kept in good condition and repair;

(e)    if the Policies are not (i) kept in full force and effect, or (ii) assigned and delivered to Mortgagee upon request;

(f)    if without the consent of Mortgagee any Leases are made, canceled or modified or if any portion of the Rents is paid for a period of more than one (1) month in advance or if any of the Rents are further assigned;

(g)    if Mortgagor, or other person or entity shall be in default under the Note, this Mortgage, the Other Security Documents or under any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt, in whole or in part, or otherwise executed and delivered in connection with the Note, this Mortgage, the Other Security Documents or the loan evidenced and secured thereby;

(h)    if any representation or warranty of Mortgagor, or of any person or entity guaranteeing payment of the Debt (a "Guarantor"), or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage made herein or in any such guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Mortgage or any such guaranty, shall prove false or misleading in any material respect;

(i)    if Mortgagor, or any Guarantor shall make an assignment for the benefit of creditors;

(j)    if a court of competent jurisdiction enters a decree or order for relief with respect to Mortgagor, or any Guarantor under Title 11 of the United States Code as now constituted or hereafter amended or under any other applicable Federal or state bankruptcy law or other similar law, or if such court enters a decree or order appointing a receiver, liquidator, assignee, trustee, sequestrator (or similar official) of Mortgagor, or any Guarantor or of any substantial part of their respective properties, or if such court decrees or orders the winding up or liquidation of the affairs of Mortgagor, or any Guarantor;

(k)    if Mortgagor, or any Guarantor files a petition or answer or consent seeking relief under Title 11 of the United States Code as now constituted or hereafter amended, or under any other applicable Federal or state bankruptcy law or other similar law, or if Mortgagor, or any Guarantor consents to the institution of proceedings thereunder or to the filing of any such petition or to the appointment of or taking possession by a receiver,

14

liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of Mortgagor, or any Guarantor, or of any substantial part of their respective properties, or if Mortgagor, or any Guarantor fails generally to pay their respective debts as such debts become due, or if Mortgagor, or any Guarantor takes any action in furtherance of any action described in this subparagraph;

(1)     if Mortgagor shall continue to be in default under any of the other terms, covenants or conditions of this Mortgage for five (5) days after notice from Mortgagee in the case of any default which can be cured by the payment of a sum of money or for ten (10) days after notice from Mortgagee in the case of any other default, provided that if such default cannot reasonably be cured within such ten (10) day period and Mortgagor shall have commenced to cure such default within such ten (10) day period and thereafter diligently and expeditiously proceeds to cure the same, such ten (10) day period shall be extended for so long as it shall require Mortgagor in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of forty-five (45) days;

(m)     if Mortgagor, or other person shall be in default under any mortgage or deed of trust covering any part of the Mortgaged Property, whether superior or inferior in lien to this Mortgage;

(n)     if the Mortgaged Property shall become subject (i) to any tax lien, other than a lien for local real estate taxes and assessments not due and payable, or (ii) to any lis pendens, notice of pendency, stop order, notice of intention to file mechanic's or materialman's lien, mechanic's, materialman's or other lien, and, in any such event, the same shall remain undischarged or unbonded for thirty (30) days;

(o)     if, after cancellation or termination by an existing insurer, or notice thereof, on the application of Mortgagee, two (2) or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the Mortgaged Property;

(p)     if Mortgagor has made any material misrepresentation in this Mortgage or any of the Other Security Documents;

(q)     if Mortgagor, and any Guarantor shall fail to maintain a minimum debt coverage, as defined herein, at all times of 1.2 to 1;

(r)     if there shall be any event with respect to Mortgagor, any Guarantor or the Mortgaged Property which results in a material adverse effect thereon; or

(s)     if Mortgagor, or any Guarantor defaults in payment of any other indebtedness, including without limitation, any indebtedness owed to the Mortgagee, or shall default in the performance of any term, covenant, condition or agreement of any indebtedness if the effect of such default is to permit the holder of such indebtedness to accelerate the maturity thereof.

15

Z:\CChen Documents\505- Mortgage v.1.doc

Upon the occurrence of any Event of Default (whether or not there has been a notice of default issued by Mortgagee), (a) Mortgagor will pay, from the date of that Event of Default, interest on the unpaid principal balance of the Note at (i) the rate equal to twenty-four percent (24%) per annum, or (ii) the maximum interest rate which Mortgagor may by law pay, whichever is lower (the "Default Rate") and (b) Mortgagee shall have the right to exercise any and all rights and remedies available at law or in equity. Mortgagee, to the extent permitted by law, may choose to utilize the procedures set forth in Article 14 of the Real Property Actions and Proceedings Law and commence a non-judicial foreclosure by power of sale of this Mortgage. To the extent permitted by law, Mortgagor waives any right granted pursuant to Section 1421, or any other provision of the Real Property Actions and Proceedings Law, to challenge Mortgagee's election to enforce this Mortgage by means of such non-judicial power of sale unless Mortgagor in good faith believes there is one or more specific factual, meritorious defenses to the foreclosure action. It is expressly acknowledged and agreed that the Default Rate shall be in effect at all times after an Event of Default shall have occurred and be continuing until the full principal amount of the Debt shall have been finally and indefeasibly paid in full, and that such Default Rate shall continue in effect after the entry of any money judgment or decree or other judgment or decree which may be entered in any action or proceeding under this Mortgage or the Note (including any deficiency proceeding) notwithstanding any provision of law or rule providing for post-judgment interest at a lower rate, unless interest at the higher rate provided for herein shall be expressly prohibited by specific provision of any applicable statute, rule or regulation of the State of New York. It is further expressly agreed and acknowledged by Mortgagor that the Default Rate shall apply to any such judgment or decree until the final and indefeasible payment in full of all amounts due under such judgment or decree is received by Mortgagee. As such, the Default Rate shall survive the entry of any such judgment or decree and any merger, or claim of merger, of the Note or this Mortgage into any such judgment or decree.

25.    **Right to Cure Defaults.** If default in the performance of any of the covenants of Mortgagor herein occurs, Mortgagee may, at its discretion (but without any obligation), remedy the same and for such purpose shall have the right to enter upon the Mortgaged Property or any portion thereof without thereby becoming liable to Mortgagor or any person in possession thereof holding under Mortgagor. If Mortgagor shall remedy such a default or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose the Mortgage or collect the Debt, the costs and expenses thereof (including attorneys' fees to the extent permitted by law), with interest as provided in this paragraph, shall be paid by Mortgagor to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such default or in appearing in, defending, or bringing any such action or proceeding shall be paid by Mortgagor to Mortgagee upon demand, with interest at a rate per annum equal to the Default Rate, for the period after notice from Mortgagee that such costs or expenses were incurred to the date of payment to Mortgagee, and shall be secured by this Mortgage.

26.    **Compliance with Other Agreements.** Mortgagor shall comply with the terms of the Note, this Mortgage, the Other Security Documents and any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

27.    **Security Agreement.** This Mortgage constitutes both a real property mortgage and a "security agreement", within the meaning of the Uniform Commercial Code, and the Mortgaged Property includes both real and personal property and all other rights and interest, whether tangible

16

Z:\CChen Documents\505- Mortgage v.1.doc

or intangible in nature of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted to Mortgagee, as security for the Debt, a security interest in the Equipment and in all of the other Mortgaged Property which is not real property (the "Other Personal Property"). If Mortgagor shall default under the Note or this Mortgage, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Equipment or the Other Personal Property or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Equipment or the Other Personal Property. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Equipment and the Other Personal Property and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including legal expenses and attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting its interest in the Equipment and the Other Personal Property and in enforcing its rights hereunder with respect to the Equipment or the Other Personal Property. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Equipment or the Other Personal Property sent to Mortgagor in accordance with the provisions of the Mortgage at least seven (7) days prior to the date of any such sale, disposition or other action, shall constitute reasonable notice to Mortgagor, and the method of sale or disposition or other intended action set forth or specified in such notice shall conclusively be deemed to be commercially reasonable within the meaning of the Uniform Commercial Code unless objected to in writing by Mortgagor within five (5) days after receipt by Mortgagor of such notice. The proceeds of any sale or disposition of the Equipment or the Other Personal Property, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such order, priority and proportions as Mortgagee in its discretion shall deem proper.

28.    **Appointment of Receiver.** Mortgagee, in any action to foreclose this Mortgage or upon the actual or threatened waste to any part of the Mortgaged Property or upon the occurrence of any default hereunder, may, without notice, apply for the appointment of a receiver of the Rents, and shall be entitled to the appointment of such receiver as a matter of right, without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person then liable for the payment of all or any portion of the Debt.

29    **Marshalling.** Mortgagor waives and releases any right to have the Mortgaged Property marshalled.

30.    **Waiver of Statutory Rights.** Mortgagor shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "Moratorium Laws", now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, but hereby waives the benefit of such laws to the full extent that Mortgagor may do so under applicable law. Mortgagor hereby waives for itself and all who may claim through or under it, and to the full extent Mortgagor may do so under applicable law, any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage or granted under any present or future statute.

31.    **Actions and Proceedings.** Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding,

17

in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, determines should be brought to protect its interest in the Mortgaged Property or to foreclose upon or otherwise realize upon the security for the Debt afforded by this Mortgage or by any of the Other Security Documents. Mortgagee may take such action by attorneys selected by Mortgagee. Mortgagor shall pay all expenses in connection therewith on demand, including attorneys' fees and disbursements.

32.    **Recovery of Sums Required to be Paid.** Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same may become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for any default by Mortgagor existing at the time such earlier action was commenced.

33.    **Filing of Mortgage, etc.** Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien hereof upon, and the interest of Mortgagee in the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplement hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all Federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance. Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

34.    **Further Acts, etc.** Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time and at any time, require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee the property and rights hereby mortgaged or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of the Mortgage or for filing, registering or recording the Mortgage and, on demand, will execute and deliver and hereby authorizes Mortgagee as Mortgagor's attorney-in-fact to execute in the name of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien hereof upon the Mortgaged Property.

35.    **Waiver of Notice.** Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not expressly provide for the giving of notice by Mortgagee to Mortgagor.

18

Z:\CChen Documents\505- Mortgage v.1.doc

36.    **Sole Discretion of Mortgagee.** Wherever pursuant to this Mortgage, Mortgagee exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Mortgagee, such decision of Mortgagee shall be in the sole discretion of Mortgagee and shall be final and conclusive.

37.    **Reasonableness.** If at any time Mortgagor believes that Mortgagee has not acted reasonably in granting or withholding any approval or consent under the Note, this Mortgage or any other document or instrument now or hereafter executed and delivered in connection therewith or otherwise with respect to the loan secured hereby, as to which approval or consent either Mortgagee has expressly agreed to act reasonably, or absent such agreement, a court of law having jurisdiction over the subject matter would require Mortgagee to act reasonably, Mortgagor's sole remedy shall be to seek injunctive relief or specific performance and no action for monetary or punitive damages shall in, any event be maintained by Mortgagor against Mortgagee,

38.    **Usury Laws.** This Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the principal balance due under the Note at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by law to contract or agree to pay. If by the terms of this Mortgage or the Note, Mortgagor is at any time required or obligated to pay interest on the principal balance due under the Note at a rate in excess of such maximum rate, the rate of interest under the Note shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

39. **Non-Residential Property.** This Mortgage does not cover real property principally improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units each having their own separate cooking facilities.

40. **Construction.** The terms of the Mortgage shall be construed in accordance with the laws of the State of New York, without giving effect to the conflicts of law provisions thereof.

41. **Non-Waiver.** The failure of Mortgagee to insist upon strict performance of any term of this Mortgage shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligation to pay the Debt at the time and in the manner provided for its payment in the Note, this Mortgage and the Other Security Documents by reason of (i) failure of Mortgagee to comply with any request of Mortgagor to take any action to foreclose the Mortgage or otherwise enforce any of the provisions hereof, the Note, the Other Security Documents or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property or any other security for the Debt, or (iii) any agreement or stipulation between Mortgagee and any subsequent owner or owners of the Mortgaged Property or other person extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage, the Other Security Documents or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, without first having obtained the consent of Mortgagor, and in the latter event, Mortgagor shall continue to be obligated to pay the Debt at the time and in the manner provided in the Note, this Mortgage, and the

19

Other Security Documents, as so extended, modified and supplemented, unless expressly released and discharged by Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any senior or subordinate lien, encumbrance, right, title or interest in or to the Mortgaged Property, Mortgagee may release any person at any time liable for the payment of the Debt or any portion thereof or any part of the security held for the Debt and may extend the time of payment or otherwise modify the terms of the Note, this Mortgage, or the Other Security Documents, including, without limitation, a modification of the interest rate payable on the principal balance under the Note and this Mortgage, without in any manner impairing or affecting this Mortgage or the lien thereof or the priority of the Mortgage, as so extended and modified, as security for the Debt over any such subordinate lien, encumbrance, right, title or interest. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every additional right and remedy now or hereafter afforded by law. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

42. **Inapplicable Provisions.** If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision.

43. **Certain Definitions.** Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage shall be used interchangeably in singular or plural form and the word "Mortgagor" shall mean each Mortgagor and, subject to the provisions hereof, any subsequent owner or owners of the Mortgaged Property or any part thereof or interest therein, the word "Mortgagee" shall mean Mortgagee or any subsequent holder of the Note, the word "Note" shall mean the Note or any other evidence of indebtedness secured by this Mortgage, the word "Guarantor" shall mean each person guaranteeing payment of the Debt or any portion thereof or performance by Mortgagor of any of the terms of this Mortgage and their respective heirs, executors, administrators, legal, representatives, successors and assigns, the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property or interest therin, and the word "Debt" shall mean all sums secured by the Mortgage. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

44. **No Oral Change.** This Mortgage may only be modified or amended by an agreement in writing signed by Mortgagor and Mortgagee, and may only be released, discharged or satisfied of record by an agreement in writing signed by Mortgagee.

45. **Notice.** Any notice, request, demand, statement or consent made hereunder shall be in writing and shall be deemed to have been duly given upon receipt if delivered by hand or two days after the same is mailed, by express, registered or certified mail, postage prepaid, or one

20

Z:\CChen Documents\505- Mortgage v.1.doc

day after the same is sent by a nationally recognized courier service that regularly maintains records of items picked up and delivered, as follows:

If to Mortgagor:

505 W 150th St LLC
505 West 150th Street
New York, New York 10031

If to Mortgagee:

Lenders Capital, LLC
20 West 20th Street
Suite 703
New York, New York 10011
Attention: Joel Radmin

Each party may designate a change of address by notice to the other party, given at least fifteen (15) days before such change of address is to become effective. Notices do not have to be accepted in order to be deemed valid.

46. **Headings, etc.** The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

47. **Relationship.** The relationship of Mortgagee to Mortgagor hereunder is strictly and solely that of lender and borrower and nothing contained in the Note, this Mortgage or the Other Security Documents is intended to create, or shall in any event or under any circumstances be construed as creating, a partnership, joint venture, tenancy-in-common, joint tenancy or other relationship of any nature whatsoever between Mortgagee and Mortgagor other than as lender and borrower. Mortgagor acknowledges that: (i) Mortgagor has complete control over the Mortgaged Property, (ii) Mortgagor has the sole responsibility for the control and management of the Mortgaged Property, and (iii) Mortgagee performs no function with respect to the Mortgaged Property in terms of management and control.

48. **Trust Fund.** Pursuant to Section 13 of the Lien Law of New York, Mortgagor shall receive the advances secured by this Mortgage and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

49. **Liability.** If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

50. **Authority.** Mortgagor (and the undersigned representative of Mortgagor, if any) has full power, authority and legal right to execute this Mortgage and to mortgage, transfer, sell and

21

Z:\CChen Documents\505- Mortgage v.1.doc

assign the Mortgaged Property pursuant to the terms hereof and to perform all of the terms of this Mortgage.

**51.  Notice of Litigation.** Mortgagor hereby covenants to advise Mortgagee in writing every time Mortgagor is made a party to any litigation, proceeding or other event that may result in liability to Mortgagor in which the amount of potential exposure to Mortgagor is $25,000.00 or more, whether or not the same is or may be covered by insurance.

**52.  Indemnification.** Mortgagor shall protect, indemnify and save harmless Mortgagee, its agents, representatives, successors and assigns from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses, whether incurred within or outside the judicial process), imposed upon or incurred by or asserted against Mortgagee by reason of ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any rents; any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof, any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs; any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof, the presence, disposal, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Material on, from, or affecting the Mortgaged Property; any personal injury (including, without limitation, wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Material on, from or affecting the Mortgaged Property; any lawsuit brought or threatened, settlement reached, or governmental order relating to such Hazardous Materialon, from or affecting the Mortgaged Property; or any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Material on, from or affecting the Mortgaged Property, including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses; except to the extent any of the foregoing (i) occurs after the Mortgagee has taken possession of the Mortgaged Property to the exclusion of Mortgagor and (ii) results solely from the negligence or willful misconduct of the Mortgagee. Any amounts payable to Mortgagee by reason of the application of this Section 54 shall be secured by the Mortgage and shall become immediately due and payable and shall bear interest in accordance with the terms of the Mortgage from the date loss or damage is sustained by Mortgagee until paid. The obligations and liabilities of Mortgagor under this Section 54 shall survive any termination, satisfaction, assignment, entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of the Mortgage.

**53.  Covenants Regarding Residential Premises.** Mortgagor covenants that it will not enter into a new lease(s) for any of the residential spaces (or any portion thereof) at rents (i) lower than those shown as actual rents, or projected rents for vacant space, shown on the rent roll delivered by Mortgagor to Mortgagee, or (ii) at rental rates lower than those comparable to existing local market rates, or (iii) at other than legal rents. With respect to existing residential tenants, Mortgagor will not extend, modify, or renew the existing leases at rents lower than those presently being charged to the existing residential tenants as shown on the rent roll delivered by Mortgagor to Mortgagee. All residential leases shall be drawn on standard forms

22

Z:\CChen Documents\505- Mortgage v.1.doc

customarily utilized, and shall provide that each lease is subordinate to this Mortgage, and any renewal, modification, extension or recasting thereof, and that the tenant agrees to attorn to Mortgagee. All leases will be arms length transactions.

54. **WAIVER OF TRIAL BY JURY.** MORTGAGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, AND MORTGAGEE BY ITS ACCEPTANCE OF THE NOTE AND THIS MORTGAGE IRREVOCABLY AND UNCONDITIONALLY WAIVES, ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THE NOTE, THIS MORTGAGE OR THE OTHER SECURITY DOCUMENTS.

55. **Covenant Against Additional Financing.** Mortgagor covenants and warrants to the Mortgagee that Mortgagor will not without the written consent of the Mortgagee, directly or indirectly, create or suffer or permit to be created or stand against the Mortgaged Property or any portion thereof or interest therein or against the rents, issues and profits therefrom, any prior or subordinate Mortgage (other than a Prior Mortgage), lien (including the liens of mechanics and materialmen), pledge, title retention agreement, attachment, security interest, charge or encumbrance which may affect the or any part thereof or interest therein, whether prior to or on a parity with, or subordinate to, the lien of this Mortgage except this Mortgage, and Mortgagor's failure to promptly discharge any such mortgage, lien, pledge, title retention agreement, attachment, security interest, charge or encumbrance which may affect the Mortgaged Property as aforesaid shall constitute an Event of Default that will be enforceable with the same force and effect, and with the same remedies, as though a default had been made in the payment of the regular installments of principal and/or interest as herein elsewhere provided.

56. **Investment Property.** Mortgagor represents and warrants that the Mortgaged Property is held for investment purposes solely.

57. **Maximum Indebtedness.** Notwithstanding anything to the contrary set forth in this Mortgage, the maximum amount of principal indebtedness secured by this Mortgage or which under any contingency may become secured hereby at any time hereafter is $350,000.00 together with interest thereon, and all amounts expended by Mortgagee to maintain the lien of this Mortgage or protect any of the Mortgaged Property, including without limitation, all amounts in respect of insurance premiums and real estate taxes, charges and assessments, litigation expenses to prosecute or defend the rights, remedies and lien of this Mortgage or title to the Mortgaged Property, and any costs, charges or amounts to which Mortgagee becomes subrogated upon payment, whether under recognized principles of law or equity or under express statutory authority.

58. **Single Purpose Entity Covenants.** Mortgagor represents and warrants, and covenants for so long as any obligations secured by this Mortgage remain outstanding, as follows:

23

Z:\CChen Documents\505- Mortgage v.1.doc

(a) Mortgagor does not and will not own any asset or property other than: (i) the Mortgaged Property; and (ii) personal property necessary for the ownership or operation of the Mortgaged Property;

(b) Mortgagor does not and will not engage in any business other than the ownership of the Mortgaged Property and activities incidental thereto;

(c) Mortgagor shall not merge into or consolidate with any person, or dissolve, terminate, liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure;

(d) Mortgagor shall observe all organizational formalities, and preserve its existence as an entity duly organized, validly existing and in good standing under the applicable legal requirements of the jurisdiction of its organization or formation. Mortgagor shall not amend, modify, terminate or fail to comply with the provisions of its organizational documents;

(e) Mortgagor has not incurred and will not incur any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation and including any debt owing to a member, or an affiliate of Mortgagor, or any other person), except with Mortgagee's prior written approval in each instance, and no indebtedness is or shall be secured by Mortgagor's fee interest in the Mortgaged Property without Mortgagee's express written approval, which approval may be granted or withheld at Mortgagee's sole discretion;

(f) Mortgagor will not make any loans or advances to any third party (including any constituent party, member, or any affiliate of Mortgagor, or any other person);

(g) Mortgagor has done or caused to be done, and will do or cause to be done, all things necessary to preserve its existence. Mortgagor will not, nor will Mortgagor permit any party to amend, modify or otherwise change the articles of organization or other organizational documents (except as set forth herein), as the case may be, of such Mortgagor in a manner which would adversely affect Mortgagor's existence as a single purpose entity as is contemplated hereby;

(h) Mortgagor will maintain books of account, records, bank accounts, financial statements, and any other entity documents separate and apart from those of its affiliates and any constituent party, and any other person. Mortgagor shall not change the principal place of its business or the jurisdiction of its formation without the prior written consent of Mortgagee;

(i) Mortgagor is and will be, and at all times will hold itself out to the public as, a legal entity separate and distinct from any other entity or person (including any affiliate or constituent party of Mortgagor), and will use and conduct its business in its own name;

(j) Neither Mortgagor nor any constituent party will cause or seek the dissolution or winding up, in whole or in part, of Mortgagor;

(k) Mortgagor will not commingle its funds and other assets with those of any affiliate or constituent party of Mortgagor, or any other person. Mortgagor will not pledge its assets for

24

the benefit of any affiliate or constituent party of Mortgagor or any other person, nor assume or guarantee the debts of any other person, hold itself out to be responsible for the debts of any other person, or otherwise hold out its credit as being available to satisfy the obligations of any other person;

(l) Mortgagor does not or will not pay another person's liabilities out of its own funds, nor make any loans or advances to any other person;

(m) Mortgagor shall not own any subsidiary, or make any investment in, any person;

(n) Mortgagor shall not enter into any contract or agreement with any member, principal, or any affiliate of Mortgagor, except upon terms and conditions that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arm's length basis with an unaffiliated third person;

(o) Mortgagor shall not maintain its assets in such a manner that it would be costly or difficult to segregate, ascertain or identify its individual assets from those of any other person;

(p) Mortgagor will file or cause to be filed its own tax returns and shall not file a consolidated tax return with any other person;

(q) Mortgagor shall maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(r) Mortgagor shall not (i) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any "Creditor's Rights Laws"; (ii) seek or consent to the appointment of a receiver, liquidator, or any similar official, (iii) take any action that might cause such entity to become insolvent, or (iv) make an assignment for the benefit of creditors. For purposes herein "Creditors Rights Laws" shall mean any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship, arrangement, adjustment, winding up, liquidation, dissolution, composition or other relief with respect to its debts or debtors.

(s) Mortgagor shall not fail to remain solvent or pay its own liabilities (including without limitation, Federal and State taxes, salaries of its own employees, and expense of agents and contractors) as the same are due from its own funds;

(t) Mortgagor shall not acquire obligations or securities of its members or other affiliates;

(u) Mortgagor shall not change or permit to be changed (i) Mortgagor's name, (ii) Mortgagor's identity, (iii) Mortgagor's principal place of business, (iv) Mortgagor's organizational structure, (v) Mortgagor's state of organization, or (vi) Mortgagor's organizational identification number or employee or taxpayer identification number, without in each case first obtaining the prior written consent of Mortgagee; and

25

(v)    Mortgagor shall pay any and all taxes due to be paid by Mortgagor as a result of the execution of this Mortgage from its own funds.

[SIGNATURE PAGE FOLLOWS]

26

Z:\CChen Documents\505- Mortgage v.1.doc

IN WITNESS WHEREOF, Mortgagor has duly executed this Mortgage as of the day and year first above written.

505 W 150TH ST LLC

By:
Name:
Its:

by:
as Attorney in Fact by virtue of Power of Attorney
to be recorded simultaneously herewith.

State of New York    )
                     ) ss:
County of New York )

On the 27 day of _August_ in the year 2008 before me, the undersigned, personally appeared _Yolanda Reeder_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Signature and Office of individual
taking acknowledgment

E. VICKY KRYONERIS
NOTARY PUBLIC, State of New York
No. 01KR6069064
Qualified in Nassau County
Commission Expires March 17, 2011

27

Z:\CChen Documents\505- Mortgage v.1.doc

## SCHEDULE A

Real property in the City of New York, County of New York, State of New York, described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF NEW YORK, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF 150TH STREET, DISTANT 145 FEET WESTERLY FROM THE NORTHWESTERLY CORNER OF SAID 150TH STREET AND AMSTERDAM AVENUE;

THENCE WESTERLY ALONG 150TH STREET, 15 FEET;

THENCE NORTHERLY PARALLEL WITH AMSTERDAM AVENUE AND PART OF THE WAY THROUGH A PARTY WALL, 99 FEET 11 INCHES TO THE CENTER LINE OF THE BLOCK BETWEEN 150TH AND 151ST STREETS;

THENCE EASTERLY AND PARALLEL WITH 150TH STREET AND ALONG THE CENTER LINE OF THE BLOCK 15 FEET;

THENCE SOUTHERLY AGAIN PARALLEL WITH AMSTERDAM AVENUE AND PART OF THE DISTANCE THROUGH ANOTHER PARTY WALL 99 FEET 11 INCHES TO THE NORTHERLY SIDE OF 150TH STREET, AT THE POINT OR PLACE OF BEGINNING.

For Information: District  Section  Block 2082  Lot 26

First American Title Insurance Company of New York